J. A. LEAK, JR., AND R. E. LITTLE, JR., PARTNERS UNDER THE FIRM NAME AND STYLE OF LEAK & LITTLE, v. J. L. ARMFIELD AND WIFE, DION G. ARMFIELD, AND CHASE BOREN.

(Filed 23 April, 1924.)

**Mortgages—Power of Sale—Deeds and Conveyances—Fraud—Equity—Injunction—Tender—Payment.**

The unsecured creditors of the mortgagor, who seek to set aside his deed for fraud, must first make tender to the mortgagee or pay off the mortgage, when by its terms the power of sale therein may be exercised, before they are entitled to the equitable relief of enjoining the sale upon the ground stated, for otherwise they can obtain no equitable right against the mortgagee for the relief sought, without which the courts cannot interfere under the rules of equity applying in such instances.

APPEAL by Chase Boren from *Shaw, J.,* at October Term, 1923, of GUILFORD.

Civil action. On 7 April, 1920, the defendant J. L. Armfield and wife, Dion G. Armfield, executed to Chase Boren, the defendant (now Mrs. D. M. Stafford), for balance purchase price of land, a mortgage on a certain piece of land in the city of Greensboro, N. C. The condition of said mortgage is as follows:

"*Provided always,* and these presents are upon the express condition that if the said parties of the first part pay, or cause to be paid, to the

said party of the second part the full sum of $30,000 on or before 1 April, 1923, with interest thereon, payable annually at the rate of 6 per cent per annum till paid, according to the terms of five certain bonds as follows: Two notes of $5,900 each due 1 April, 1921, one note of $8,400 due 1 April, 1922, one note of $5,900 due 1 April, 1923, and one note of $3,900 due on 1 April, 1923, bearing even date herewith, executed by the said J. L. Armfield, then these presents and the said bond shall determine and be void. But in case of the nonpayment of the said sum of $30,000, or any part thereof, together with its interest at the time above limited, then in such case it shall be lawful for the said party of the second part, her heirs, executors, administrators or assigns, and they are hereby so empowered to sell and convey the above described premises, or any part thereof, at public auction to the highest bidder, for cash, after advertising the same for thirty days at least, and on such sale to execute to the purchaser sufficient deeds therefor, apply the proceeds of such sale to the discharge of said debt and interest, rendering the overplus moneys, if any, to the said parties of the first part, or legal representatives, after deducting the cost of such sale and registration of this deed."

The notes secured by the mortgage are now owned by the following persons:

W. C. Boren, Jr. .......................................................................$5,900.00
Miss Chase Boren (now Mrs. D. M. Stafford) ........................... 5,039.00
Mrs. Clara Peebles ....................................................................... 5,039.00
Mrs. Louise Andrews .................................................................... 5,900.00
Mrs. Mamie Spence ....................................................................... 8,400.00

The interest on all of said notes is due and unpaid from 1 April, 1922, subject to a payment of $1,400 to W. C. Boren, Jr., on his note made some time since 1 April, 1923. Mrs. Clara Peebles' note is $5,900, but $861 has been paid on the principal; all of said indebtedness is due and the holders of said notes have called upon Chase Boren to sell the land described in the mortgage.

On 22 April, 1920, J. L. Armfield executed a deed to his wife, Dion G. Armfield, for the equity of redemption in said land.

The plaintiffs obtained a judgment against J. L. Armfield and brought this action to set aside the deed made by J. L. Armfield to his wife, Dion G. Armfield, on the ground of fraud. The prayer of plaintiffs is that the conveyance "be declared void and set aside in so far as the same affects the rights of plaintiffs, and that it be decreed that the

property therein described be subjected to the payment of the judgment hereinabove set out, *subject to the rights of the defendant Chase Boren,*" etc.

During the pendency of the case, Chase Boren gave notice to plaintiffs as follows:

"And whereas all of said notes have become due and the holders of said notes have applied to Miss Chase Boren for her to sell real estate to pay the indebtedness due thereon, as default has been made in payment of the same; and whereas it is the duty under the trust deed of the said Miss Chase Boren to make sale of said property to pay said indebtedness when called upon to do so; and whereas the plaintiff in this action and the defendants, other than Miss Chase Boren, have threatened to restrain in the sale under the power contained in said trust deed, but the said Miss Chase Boren is going to sell under the said power of sale on 8 October, 1923, at the courthouse door in Greensboro, N. C., unless she is restrained or enjoined from doing so: Now, therefore, take notice that you are required to appear before his Honor, T. J. Shaw, on 8 September, 1923, at the courthouse in Greensboro, N. C., and show cause, if any you have, why the said Chase Boren should be restrained from making the aforesaid sale."

The hearing was continued until October term of court.

There was another case pending in the Superior Court of Guilford County against the same defendants as in this case, entitled *"T. J. Finch, Receiver of the Bank of Thomasville and the Bank of Beaufort, v. J. L. Armfield, Dion G. Armfield, and Miss Chase Boren,"* setting up that the plaintiffs in said action were creditors of the said J. L. Armfield, and asking for the same relief as the plaintiffs ask in this action, the purpose of both actions being to set aside the deed from J. L. Armfield to his wife, Dion G. Armfield, as a fraud upon the creditors. Both cases were calendared for trial on the first day of court, 1 October, 1923, and were consolidated for the purpose of trial, and a trial was had, consuming the first three days of court. But a juror was run over by an automobile and was unable to serve further, and his Honor withdrew a juror and made a mistrial, and the court then heard the motion to restrain the sale under the mortgage deed.

At the hearing the court made an order restraining the defendant Chase Boren from selling the property and appointed a receiver. From the order made, Chase Boren excepted, assigned error, and appealed to the Supreme Court.

*Jas. A. Lockhart and King, Sapp & King for plaintiffs.*
*Brooks, Parker & Smith for Dion G. Armfield.*
*J. A. Spence for Chase Boren.*

CLARKSON, J. The sole question presented is, Did the court below commit error in restraining the sale?

In *Lea v. Johnson,* 31 N. C., 19, *Pearson, J.,* said: " 'Hard cases are the quicksands of the law.' In other words, a judge sometimes looks so much at the apparent hardship of the case as to overlook the law."

In *Cureton v. Moore,* 55 N. C., 207, it was said: "A court of equity can no more relieve against 'hard cases,' unless there be some ground of equity jurisdiction, than a court of law, for both courts act upon general principles. Equity, as well as law, is a science, and does not depend upon *the discretion* of the court entrusted with equity jurisdiction, or the vague ideas that may be entertained as to 'hard cases.' "

In the instant case, the learned and conscientious judge who heard this case and granted the injunction found as a fact "that the property sought to be sold under said mortgage is now in controversy, and the conveyance of said property from J. L. Armfield to Dion G. Armfield is being attacked by creditors of the said J. L. Armfield, and that the mortgage indebtedness of Miss Chase Boren is not controverted, and that a sale of said property as advertised on 8 October, 1923, by the said mortgagee would be prejudicial to the interests of all parties to the action, except Miss Chase Boren, and that the security held by her is amply sufficient to cover her debt."

It nowhere appears in the record that Chase Boren consented to the procedure in which she was made a party or waived any right. This being so, from the facts found by the court below as a matter of law, we think that the restraining order ought not to have been granted.

If subsequent judgment creditors or litigants over the equity of redemption could "tie up" a first mortgage and effect its terms, it would seriously impair a legal contract. It may be "hard measure" to sell, but this is universally so. The mortgagee has a right to have her contract enforced under the plain terms of the mortgage. To hold otherwise would practically nullify the present system of mortgages and deeds in trust on land, so generally used to secure indebtedness and seriously hamper business. Those interested in the equity of redemption have the right of paying off the first lien when due. We can see no equitable ingredient in the facts of this case. The mortgage is not a "scrap of paper." It is a legal contract that the parties are bound by. The courts, under their equitable jurisdiction, where the amount is due and ascertained—no fraud or mistake, etc., alleged—have no power to impair the solemn instrument directly or indirectly by nullifying the plain provisions by restraining the sale to be made under the terms of the mortgage.

*Allen, J.,* in *Bonner v. Rodman,* 163 N. C., 2, says: "The plaintiff admitted that he owed the defendant $436, and it was therefore within the power of the court, upon the facts appearing in this record, to re-

quire the payment of this sum within a reasonable time before granting equitable relief, upon the familiar principle that he who seeks equity must do equity, although a case might arise in which the court could refuse to impose such a condition. An order similar to the one appealed from was approved in *Pritchard v. Sanderson,* 84 N. C., 299." Story's Eq. Jurisprudence (14 ed.), sec. 1369.

In *Smith v. Connor,* 65 Ala., 371, it was said: "When subsequent purchasers or encumbrancers file a bill in equity against the first mortgagee, asking an account and redemption, and not denying that there is a balance due on the mortgage debt, it follows that they ought to make a tender in the bill or offer to pay whatever may be found due."

The prayer in the plaintiffs' complaint recognizes the mortgagee's rights and the prayer is made "subject to the rights of the defendant Chase Boren," etc.

For the reasons given there was

Error.